■ JEWISH BOARD OF FAMILY AND CHILDREN'S SERVICES, INC., Respondent, v CITY OF NEW YORK et al., Appellants. — Order and judgment (one paper), Supreme Court, New York County (Wallach, J.), entered on or about May 14, 1984, which declared, *inter alia,* that the defendant City of New York was not permitted under paragraph 2.2 (E) of article 2 of the 1983-1984 purchase agreement to "set off" moneys due the plaintiff under the present contract for the purpose of recouping moneys owed to it by the plaintiff under agreements in force and effect prior to the contract period beginning July 1977 to 1978, reversed, on the law, without costs, to the extent appealed from, and it is declared that the city's right to recoup overpayments under paragraph 2.2 (E) of article 2 is not time limited.

Plaintiff Jewish Board of Family and Children's Services, Inc. (JBFCS), formed in 1978 through the merger of the Jewish Board of Guardians and Jewish Family Services, Inc., is a voluntary not-for-profit agency. JBFCS and its predecessors have contracted for many years with the New York City Department of Social Services (DSS) to provide foster care and other child welfare services.

Prior to 1973, these child care services were rendered by individual agencies without formal written contracts, and pursuant to regulations issued by New York City in 1960. The standards for payments to plaintiff and other agencies were set forth in these regulations, in DSS bulletins and in the Comptroller's "Terms and Conditions Governing Payments to Charitable Institutions".

In 1973, a standard written contract was developed for all affected agencies which provided that payments made to the agency are subject to audit and to the Comptroller's final adjustment after audit. Since that time, the parties have entered into a detailed "Agreement for Purchase of Child Welfare Services" on an annual basis.

The financial arrangements and contractual relationships between the city and the voluntary agencies providing child care services have continued without any fundamental change since 1960. Monthly payments are made to these agencies, based on

preliminary per diem rates of reimbursement. The applicable DSS regulation has provided that such preliminary rates are: "Subject to any retroactive upward or downward adjustment resulting from an audit by the Comptroller. All such payments prior to the Comptroller's audit will be an advance against the amount due to the agency when the appropriate final rate is certified."

In 1983-1984 paragraph 2.2 (E) of article 2 of the purchase agreement entered into by JBFCS and DSS, like the contract for the preceding year, provided as follows with regard to such adjustments: "The Department may, at its option, withhold for the purposes of set-off any monies due to the Contractor under this Agreement up to the amount of any disallowances resulting from audits of the Comptroller with regard to this Agreement or any other Agreement, including any Agreement for a term commencing prior to the term of this Agreement."

Following the execution of the 1983-1984 purchase agreement on July 1, 1983, Special Services for Children notified JBFCS, in a letter dated August 18, 1983, that recoupment of the sum of $987,440, representing the amount determined by the Comptroller in a final audit issued on August 18, 1980 to be due the city as a result of overpayments made during the years 1967-1975, would be effected by "setoffs" against monthly advance payments to plaintiff commencing in October 1983. These setoffs were to be made during a fiscal year in which plaintiff was budgeted to receive advance payments in excess of $8 million.

The amount claimed to be due the city was arrived at as a result of an audit commenced by the Comptroller in 1977. In draft reports issued in February 1979 it was found preliminarily that, as a result of overpayments during the years 1967-1975, there was due the city the sum of $1.557 million. Following audit review conferences requested by plaintiff, and in which plaintiff's representatives participated, this amount was reduced to the sum set forth in the final audit. In an effort to reach a settlement, appeals conferences between representatives of the plaintiff and the concerned city agencies were held on September 16, 1981, May 23, 1983 and July 21, 1983. The letter of August 18, 1983 followed the failure of these conferences to result in an amicable resolution of the dispute.

In this action commenced on October 11, 1983, plaintiff sought damages for alleged anticipatory breach of contract and also a judgment declaring paragraph 2.2 (E) of article 2 to be unenforceable as unconscionable, and violative of plaintiff's rights under the Federal and State Constitutions and under 42 USC § 1983. In addition, presenting the single issue raised on this

appeal, plaintiff sought a judgment in its fourth cause of action declaring paragraph 2.2 (E) of article 2 to be unenforceable to the extent to which it purports to authorize the city to "setoff" moneys due and owing under the 1983-1984 contract for overpayments which the city would have been barred by the Statute of Limitations from recovering in a court action.

Plaintiff moved for a preliminary injunction and defendant cross-moved pursuant to CPLR 3211 (a) (7); (c) for an order dismissing the complaint. In an interim order Special Term set up a schedule for the submission of such further materials as the parties might deem appropriate on a motion for summary judgment with respect to plaintiff's fourth cause of action and preliminarily enjoined implementation of the recoupment schedule. Finally, in the order appealed from, Special Term determined that paragraph 2.2 (E) of article 2 of the then-existing contract does not permit the defendant city to "set off" any moneys due to the plaintiff under the present contract for the purpose of recouping moneys owed to it by the plaintiff under agreements between the parties or their predecessors which were in force and effect prior to the contract period beginning July 1977 to June 1978. The order further denied plaintiff's motion for a preliminary injunction as academic, denied defendants' cross motion for an order pursuant to CPLR 3211 (a) (7), dismissing the plaintiff's complaint without prejudice to renewal as to all causes of action except the fourth, and severed the fourth cause of action from the remaining causes of action.

As limited by the arguments on this appeal, the single issue presented is the correctness of Special Term's determination that the city may not recoup from moneys owed the plaintiff under the 1983-1984 contract moneys claimed by the city to be due it as a result of overpayments made under agreements between the parties prior to the 1977-1978 contract period.

In a thoughtful opinion, Special Term recognized that it was within the power of the parties to agree to permit the city to recoup, from moneys due under the existing contract, overpayments found to have been made to plaintiff in the past, even if the Statute of Limitations would, in the absence of such an agreement, have constituted a defense to an action seeking to recover such overpayments. Special Term concluded that paragraph 2.2 (E) of article 2 did not represent such an agreement. In reaching this conclusion, Special Term observed that, as construed by the defendants, paragraph 2.2 (E) of article 2 gave them an unlimited period of time in which to determine whether to conduct an audit, and having completed the audit and given

622

notice of the results, an additional six years in which to decide whether to exercise their right of recoupment. Such a construction of the article seemed to Special Term so unreasonable and harsh as to make it highly improbable that it had been intended by the parties at the time the 1983-1984 contract was entered into and to compel the conclusion that the parties must have intended some time restraint.

We think it unnecessary to address the issues that might have been raised if plaintiff were suddenly confronted with setoffs from monthly advance payments due under the 1983-1984 contract that represented an effort to recoup overpayments going back to the distant past. (*Cf. Matter of Cortlandt Nursing Home v Axelrod,* 99 AD2d 105, *lv granted* 64 NY2d 602.) The realities of the situation actually presented seem to us very different.

Plaintiff's predecessor agencies were aware in 1977 of the audit that had been undertaken that year. Plaintiff knew in February 1979 that draft reports indicated that significant overpayments had been made to it during the years 1967-1975, and thereafter participated actively in audit review conferences that significantly reduced in the final audit the amount found by the Comptroller to be due the city. After the final audit, plaintiff participated in appeals conferences extending over almost three years in an effort to resolve the city's claim amicably. At the time the 1983-1984 contract was executed, plaintiff was surely on notice that the city claimed that there was due to it a large sum of money as a result of overpayments determined by the Comptroller to have been made, and that the city either intended to exercise its right to recoup that amount from payments due plaintiff under the 1983-1984 contract, or at least reserved its right to do so. Under the circumstances actually presented, we see no persuasive reason why the explicit, unambiguous words of paragraph 2.2 (E) of article 2 should not be construed in accordance with their clear meaning. Concur — Sandler, J. P., Sullivan, Carro and Bloom, JJ.